**SALE CHEVROLET, BUICK, BMW, INC. v. PETERBILT OF FLORENCE, INC.**

[133 N.C. App. 177 (1999)]

Vacated and remanded.

Judges TIMMONS-GOODSON and HUNTER concur.

_____

SALE CHEVROLET, BUICK, BMW, INC., PLAINTIFF-APPELLANT v. PETERBILT OF
FLORENCE, INC., D/B/A PETERBILT OF DUNN, DEFENDANT-APPELLEE

No. COA98-917

(Filed 4 May 1999)

**Motor Vehicles— sale—title not transfered—subsequent sale**

The trial court properly granted summary judgment for
defendant where plaintiff sold an automobile to a third party, who
paid with a personal check; plaintiff gave the third party posses-
sion of the vehicle, along with a bill of sale, an odometer state-
ment, a temporary tag, and a DMV Temporary Marker Receipt, but
did not execute a certificate of title; the third party traded the
vehicle to defendant as partial payment for a truck; the third
party's check to plaintiff was returned for insufficient funds; and
plaintiff sought a declaratory judgment that it is the owner of the
vehicle. Neither party demonstrated exemplary professional con-
duct, but plaintiff was in the better position to have avoided the
problem and defendant came the closest in observing reasonable
commercial standards of fair dealing in the trade. Plaintiff effec-
tively put the automobile into the stream of commerce and its
recourse is against the third party. N.C.G.S. § 25-2-103(1)(b).

Appeal by plaintiff from order entered 26 May 1998 by Judge G.K.
Butterfield in Lenoir County Superior Court. Heard in the Court of
Appeals 30 March 1999.

_White & Allen, P.A., by John P. Marshall and Matthew S.
Sullivan, for plaintiff-appellant._

_Law Office of James M. Johnson, by James M. Johnson, and
Law Office of Dewey R. Butler, by Dewey R. Butler, for
defendant-appellee._

McGEE, Judge.

The record in this case shows that plaintiff sold a Ford Mustang
automobile to Joyce Elizabeth Rice on 23 August 1997. On that date,

SALE CHEVROLET, BUICK, BMW, INC. v. PETERBILT OF FLORENCE, INC.

[133 N.C. App. 177 (1999)]

Rice gave plaintiff a personal check for $13,331.00 to pay for the automobile. Plaintiff gave Rice possession of the Mustang, along with a bill of sale, an odometer statement, a thirty day temporary tag and a N.C. Department of Motor Vehicles Form 38 30-Day Temporary Marker Receipt. Plaintiff did not execute a certificate of title to Rice.

On 29 August 1997, Rice traded the Mustang to defendant as partial payment for a truck. Rice showed defendant the bill of sale from plaintiff, an odometer statement signed by plaintiff and a thirty day tag signed by plaintiff. She delivered possession of the Mustang to defendant and took possession of the truck. Meanwhile, also on 29 August 1997, Rice's check for purchase of the Mustang was returned to plaintiff for insufficient funds.

Since this series of events, plaintiff has remained in possession of the title to the Mustang, and defendant has remained in possession of the Mustang.

In its complaint, plaintiff sought: (1) a declaratory judgment, pursuant to N.C. Gen. Stat. § 1-253, that it is the owner of the Mustang; (2) a judgment that it is entitled to possession of the automobile; and (3) in the alternative, the value of the Mustang. The trial court entered summary judgment in favor of defendant. Plaintiff appeals.

The question before us is whether, on these facts, plaintiff effectively placed the Mustang into the stream of commerce to the extent that defendant should be construed as a good-faith purchaser of the Mustang. We examine this question under N.C. Gen. Stat. § 20-72 (1993), the portion of the North Carolina Motor Vehicle Act that addresses transfer of ownership, and also under N.C. Gen. Stat. §§ 25-2-103(1)(b), 25-2-104(1) and 25-2-403 (1995), the pertinent sections of North Carolina's adaptation of the Uniform Commercial Code.

The North Carolina Motor Vehicle Act says in pertinent part,

[T]o assign or transfer title or interest in any motor vehicle registered under the provisions of this Article, the owner shall execute in the presence of a person authorized to administer oaths an assignment and warranty of title on the reverse of the certificate of title in form approved by the Division, including in such assignment the name and address of the transferee; and no title to any motor vehicle shall pass or vest until such assignment is executed and the motor vehicle delivered to the transferee. . . .

SALE CHEVROLET, BUICK, BMW, INC. v. PETERBILT OF FLORENCE, INC.

[133 N.C. App. 177 (1999)]

Any person transferring title or interest in a motor vehicle shall deliver the certificate of title duly assigned in accordance with the foregoing provision to the transferee at the time of delivering the vehicle[.]

N.C. Gen. Stat. § 20-72(b).

North Carolina's adaptation of the Uniform Commercial Code (UCC) says, "A person with voidable title has power to transfer a good title to a good faith purchaser for value. When goods have been delivered under a transaction of purchase the purchaser has such power even though . . . the delivery was in exchange for a check which is later dishonored[.]" N.C. Gen. Stat. § 25-2-403.

The parties direct us to two cases in which the potential for conflict between the Motor Vehicle Act and the UCC is addressed. In *Insurance Co. v. Hayes*, 276 N.C. 620, 174 S.E.2d 511 (1970), an insurer sought to avoid liability for automobile accident costs where the vehicle in question was delivered more than thirty days before the accident but the certificate of title was signed and delivered less than thirty days before the accident. Our Supreme Court held that the insured acquired ownership of the automobile less than thirty days prior to the accident; therefore, coverage was afforded under the nonowner's policy, which provided that coverage would apply to an owned vehicle for a period of thirty days following date of acquisition of such vehicle. *Id.* The *Hayes* court, citing the Motor Vehicle Act, stated that "for purposes of tort law and liability insurance coverage," ownership of a vehicle passes when:

(1) the owner executes, in the presence of a person authorized to administer oaths, an assignment and warranty of title on the reverse of the certificate of title, including the name and address of the transferee, (2) there is an actual or constructive delivery of the motor vehicle, and (3) the duly assigned certificate of title is delivered to the transferee.

*Hayes* at 640, 174 S.E.2d at 524.

*N.C. National Bank v. Robinson*, 78 N.C. App. 1, 336 S.E.2d 666 (1985), involved a dispute among a lender who provided financing to a used-car dealer, the used-car dealer, a couple who purchased a car from the dealer, and the bank that financed the couple's purchase. The used-car dealer sold the car to the couple and absconded with the payment money rather than paying it to his lender. When the lender discovered what had happened, it repossessed the car from the cou-

SALE CHEVROLET, BUICK, BMW, INC. v. PETERBILT OF FLORENCE, INC.

[133 N.C. App. 177 (1999)]

ple. The lender asserted that title had not passed to the couple because, while the used-car dealer had delivered possession of the car to the couple, he had not assigned the certificate of title to them. *Robinson* at 5, 336 S.E.2d at 669. Our Court acknowledged that the lender would prevail under the Motor Vehicle Act but held that the UCC controls over the Motor Vehicle Act when automobiles are used as collateral and are held in inventory for sale. *Robinson* at 11, 336 S.E.2d at 672 (citation omitted).

Thus, *Hayes* applies the Motor Vehicle Act on its facts, and *Robinson* applies the UCC on its facts. But neither *Hayes* nor *Robinson* are sufficiently on point to be applied to the facts before us. On these facts, we apply the following analysis.

Both parties before us are "merchants." *See* N.C. Gen. Stat. § 25-2-104(1). Both are charged with "having knowledge or skill peculiar to the practices" of their business transactions. *Id.* As merchants, both "are held to more businesslike standards than non-businessmen" and "are held to a higher standard of sophistication than are non-merchants because they are 'professionals.' " N.C. Gen. Stat. ch. 25, art. 2 ("Historical Notes, North Carolina Comment"). " 'Good faith' in the case of a merchant means honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade." N.C. Gen. Stat. § 25-2-103(1)(b).

The facts before us suggest that neither party demonstrated exemplary professional conduct. The facts further suggest, however, that of the two parties, plaintiff was in the better position to have avoided the problem and that defendant came the closest of the two in observing "reasonable commercial standards of fair dealing in the trade." *Id.*

The affidavit of defendant's agent states that Rice gave him a bill of sale from plaintiff, an odometer statement signed by plaintiff and a thirty day temporary tag signed by plaintiff. It further states that defendant's agent attempted to determine the status of the automobile title before engaging in a transaction with Rice. Plaintiff, on the other hand, gave Rice possession of a vehicle in exchange for a non-certified personal check. Plaintiff effectively put the automobile into the stream of commerce, and plaintiff's recourse is against Rice.

We affirm the trial court's entry of summary judgment for defendant.

## PROCTOR v. CITY OF RALEIGH BD. OF ADJUST.

[133 N.C. App. 181 (1999)]

Affirmed.

Judges GREENE and MARTIN concur.