JOHNNY BATTS AND GLORIA BATTS, PLAINTIFFS v. LUMBERMEN'S MUTUAL CASUALTY INSURANCE COMPANY, AN ILLINOIS CORPORATION, DEFENDANT

No. COA07-1514

(Filed 2 September 2008)

**1. Motor Vehicles— registration card issuance—not necessary to pass ownership**

Issuance of a registration card is not one of the three statutory requirements for an ownership interest in a motor vehicle to pass to the purchaser of the vehicle.

**2. Motor Vehicles— ownership interest—point of transfer**

The ownership interest in the motor vehicle is transferred and the transferee becomes the "owner" of the vehicle when the three requirements of N.C.G.S. § 20-72(b) are satisfied.

**3. Insurance— motor vehicle—untimely notice of purchase—point of transfer of ownership**

In an action to determine whether an insurer was given timely notice of a vehicle purchase, the statutory requirements for the ownership interest to pass were satisfied when the dealer executed and had notarized the reassignment of title form, plaintiffs took actual possession, and the certificate of title was delivered to the lienholder. The notice to defendant-insurer following an accident was not within 30 days of these events, as required by the policy, and the vehicle was not covered by the policy.

Appeal by defendant from judgment entered 9 August 2007 by Judge Joseph Blick in Pitt County District Court. Heard in the Court of Appeals 1 May 2008.

*The Foster Law Firm, P.A., by Jeffrey B. Foster, for plaintiff appellees.*

*Hedrick, Gardner, Kincheloe & Garofalo, L.L.P., by Reid Russell, for defendant appellant.*

McCULLOUGH, Judge.

Lumbermens Mutual Casualty Insurance Company ("defendant") appeals from a declaratory judgment, holding that at the time of Johnny Batts' and Gloria Batts' ("plaintiffs") automobile accident, the policy of insurance issued by defendant was in force, and defendant is liable for damages suffered by plaintiffs.

The relevant facts and procedural history, as stipulated by the parties, are as follows: On 12 May 2003, defendant issued a personal automobile insurance policy to plaintiffs. Plaintiffs' policy stipulated that for a newly acquired additional or replacement auto to be covered under plaintiffs' existing policy, plaintiffs must ask defendant to insure the new auto "within 30 days after [plaintiffs] become the owner[s]."

On 29 June 2003, following the issuance of plaintiffs' insurance policy, plaintiffs purchased a 2002 Chevrolet Avalanche Truck ("Chevrolet Avalanche") from Greenville Nissan. The sales invoice corresponds with this date. On 29 June 2003, plaintiff Gloria Batts ("Mrs. Batts") signed a Title Application for the Chevrolet Avalanche. Also on 29 June 2003, Barbara Noller of Greenville Nissan signed a "Dealer's Reassignment of Title to a Motor Vehicle" form, which reassigned the title to the Chevrolet Avalanche from Greenville Nissan to Mrs. Batts. Greenville Nissan then delivered the certificate of title to the lienholder, Nissan Motors Acceptance Corporation. Finally on 29 June 2003, plaintiffs took possession of the vehicle. Greenville Nissan agreed to notify plaintiffs' insurance agent, Kinston Insurance Agency ("Kinston Insurance"), of the purchase of the vehicle for the purpose of insuring the vehicle.

On 15 July 2003, the North Carolina Department of Motor Vehicles ("NCDMV") issued a registration card for the Chevrolet Avalanche in the name of Johnny Batts and Gloria Batts.

On 13 August 2003, Mrs. Batts was in a single vehicle accident which damaged the Chevrolet Avalanche. That same day, Mrs. Batts notified Kinston Insurance of her accident. This was the first notice plaintiffs' insurance agent had that plaintiffs had purchased the Chevrolet Avalanche. Also on 13 August 2003, Kinston Insurance notified defendant's underwriting department of the accident. This was the first notice that defendant had regarding plaintiffs' purchase of the vehicle.

Defendant thereafter denied plaintiffs' claim for damages resulting from the accident on the grounds that the Chevrolet Avalanche was not a covered vehicle under plaintiffs' policy because plaintiffs

had not asked defendant to insure the vehicle within 30 days after plaintiffs became owners of the vehicle.

On 27 September 2005, plaintiffs filed an action for declaratory judgment seeking to resolve the issue of whether plaintiffs had provided notice to defendant of the purchase of the vehicle within the 30-day window prescribed in the policy and whether defendant was required to provide coverage. The parties agreed that the matter would be decided by the court on cross motions for summary judgment; on 12 April 2006 and 24 April 2006, respectively, defendant and plaintiff moved for summary judgment.

The trial court granted plaintiffs' motion for summary judgment, reasoning that under *Insurance Co. v. Hayes*, 276 N.C. 620, 174 S.E.2d 511 (1970), "ownership to a motor vehicle passes when a duly assigned certificate of title is delivered to the transferee or lienholder. . . . [T]he best evidence of that date is the date of issue of the [vehicle's] registration card which was July 15, 2003." Because plaintiffs notified defendant of the accident on 13 August 2003, within 30 days of 15 July 2003, the trial court concluded that the notification to defendant of the accident occurred within the 30-day period contemplated by the insurance policy. Accordingly, the trial court concluded that plaintiffs' losses were covered under the insurance policy.

[1] The granting of summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2007). Here, the parties have stipulated all of the material facts. The sole issue on appeal is whether the trial court properly concluded that plaintiffs became the owners of their vehicle on 15 July 2003, the date in which the NCDMV issued its registration card. We reverse, as we conclude that pursuant to N.C. Gen. Stat. § 20-72(b) (2007), issuance of a registration card for a vehicle by the NCDMV is not a necessary requirement for an ownership interest to vest in the purchaser of a vehicle.

We find that the trial court misconstrued the holding of *Hayes*. In *Hayes*, our Supreme Court expressly stated, that "[t]he provisions of G.S. 20-72(b) contain specific, definite and *comprehensive* terms concerning the transfer of ownership of a motor vehicle." *Hayes*, 276 N.C. at 639, 174 S.E.2d at 523 (emphasis added). The Court held that under N.C. Gen. Stat. § 20-72(b), no ownership interest in a motor vehicle passes to the purchaser of the vehicle until:

(1) the **owner executes**, in the presence of a person authorized to administer oaths, **an assignment and warranty of title** on the reverse of the certificate of title, including the name and address of the **transferee**, (2) there is an actual or constructive **delivery of the motor vehicle, and** (3) the duly assigned certificate of **title is delivered** to the transferee. In the event a security interest is obtained in the motor vehicle from the transferee, the requirement of delivery of the duly assigned certificate of title is met by delivering it to the lien holder.

*Hayes*, 276 N.C. at 640, 174 S.E.2d at 524 (emphasis added).

Thus, under the comprehensive terms provided by N.C. Gen. Stat. § 20-72(b), there are only three requirements that must be satisfied in order for an ownership interest in a motor vehicle to pass to the purchaser of the vehicle. The issuance of a registration card, however, is not one of those three requirements. If the General Assembly had intended to require a purchaser of a vehicle to register his vehicle with the NCDMV before an ownership interest would pass to such person, the General Assembly would have provided this requirement in the comprehensive list of requirements set forth in N.C. Gen. Stat. § 20-72(b).

[2] Having decided that issuance of a registration card is not a prerequisite for an ownership interest in a vehicle to vest in a purchaser under § 20-72(b), we address plaintiffs' contention that because N.C. Gen. Stat. § 20-57, the statute governing vehicle registration, uses the term "owner," whereas § 20-72(b) uses the term "transferee," the purchaser of a vehicle does not become the vehicle's "owner" until the registration card is issued by the NCDMV. We find this argument to be without merit.

First, our Supreme Court in *Hayes* held that the legislature, in enacting N.C. Gen. Stat. § 20-72(b), "used the word 'title' as a synonym for the word 'ownership.' " *Hayes*, 276 N.C. at 630, 174 S.E.2d at 517. Therefore, the terms "ownership" and "title" can be used interchangeably. Adding such term, N.C. Gen. Stat. § 20-72(b) provides, in part: "In order to . . . transfer title *[or ownership]* in any motor vehicle . . . the owner shall execute . . . an assignment and warranty of title *[or ownership]*, including . . . the name . . . of the transferee[.]" *See* N.C. Gen. Stat. § 20-72(b). Thus, the term "transferee," as used in § 20-72(b), refers to the party to whom title or ownership of the vehicle is transferred. By definition, a party to whom ownership or title of a vehicle is transferred is the "owner" of the vehicle. N.C.

Gen. Stat. § 20-4.01(26) (2007) (defining the term "owner" as "[a] person holding the legal tile to a vehicle[.]"). Therefore, once the three requirements of § 20-72(b) are satisfied, the ownership interest in the vehicle is transferred to the transferee, and the transferee is then the "owner" of the vehicle.[1]

[3] Finally, we conclude that the three requirements for the ownership interest in the Chevrolet Avalanche to pass to plaintiffs, as set forth in N.C. Gen. Stat. § 20-72(b), were satisfied on 29 June 2003. First, on 29 June 2003, Greenville Nissan executed, in the presence of a notary public, the reassignment of title form. This reassignment of title was on a standard form provided by the NCDMV and included the name and address of the transferee, Mrs. Batts. Second, on 29 June 2003, plaintiffs took actual possession of the Chevrolet Avalanche. Third, Greenville Nissan delivered the Certificate of Title to the lienholder, Nissan Motors Acceptance Corporation. Thus, 29 June 2003 is the date that the legal ownership interest in the Chevrolet Avalanche vested in plaintiffs. It is irrelevant that the NCDMV did not issue the registration card for that vehicle until 15 July 2003.

Because plaintiffs did not notify defendant that they had purchased the Chevrolet Avalanche within the 30 days following the date that they became legal owners of that vehicle, 29 June 2003, such vehicle was not covered under plaintiffs' existing auto insurance policy on 13 August 2003, the date of the accident.

Accordingly, we reverse the trial court's judgment. This case is remanded for the entry of an order not inconsistent with this opinion.

Reversed and remanded.

Judges TYSON and STROUD concur.

---

1. We also note that while § 20-57 is intended to govern a situation in which there is only one owner at issue, the party registering the vehicle, § 20-72(b) is intended to govern a situation in which an ownership interest is being transferred between two parties. The first party being the original "owner" of the vehicle; the second party being the future "owner" of the vehicle. Therefore, use of the term "owner," where there are potentially two owners at issue, would be somewhat ambiguous. Instead, for clarity, the statute refers to the original owner, here Greenville Nissan, as the "owner." The future owner to whom title or ownership of the vehicle is transferred and to whom the vehicle is delivered, here Mrs. Batts, is simply referred to as the "transferee." Plaintiffs' contention that N.C. Gen. Stat. § 20-57 governs the transfer of the ownership interest in a vehicle simply because the statute uses the term "owner" is misguided.