JAMES RICHARD ENGLE, HAROLD LEE ENGLE, AND NORTH CAROLINA FARM BUREAU MUTUAL INSURANCE COMPANY v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, HARTFORD ACCIDENT AND INDEMNITY COMPANY, JERRY FRANKLIN ABERNATHY, CLARENCE EUGENE ABERNATHY, RONALD WAYNE NORMAN, MARCUS VAUGHN WOODRING, ERIC VON WOODRING, CATHERINE WOODRING, MELISSA D. WOODRING, J. BRUCE McKINNEY, ADMINISTRATOR OF THE ESTATE OF WILLIAM MICHAEL SILVERS, AND DALLAS FOX, ADMINISTRATOR OF THE ESTATE OF TONY MARTIN FOX

No. 7725SC549

(Filed 11 July 1978)

Insurance § 87.3— permission to drive given by insured's son—driver in lawful possession of vehicle

The trial court did not err in finding as a fact and concluding as a matter of law that, at the time of the collision in question, a driver was in "lawful possession" of a car insured by plaintiff insurance company where the evidence tended to show that the driver had the express permission of insured's son to drive the car; for all practical purposes, the son was the "owner" of the car, though the title was in the name of his father, the insured; and, though insured had instructed his son to let no one else drive the car, he nevertheless made no effort to get back possession of the car when he discovered two days before the accident that his son had let someone else borrow it. G.S. 20-279.21(b)(2).

APPEAL by plaintiffs from *Snepp, Judge.* Judgment entered 10 May 1977 in Superior Court, BURKE County. Heard in the Court of Appeals 3 April 1978.

Plaintiffs instituted this action pursuant to the Declaratory Judgment Act to determine liability under an insurance policy issued by plaintiff insurance company (Farm Bureau).

Following a trial without a jury, the court made findings of fact which are summarized in pertinent part as follows:

On 17 August 1975 a collision occurred in Catawba County between a 1970 MG driven by William Michael Silvers (Silvers), a 1968 Camaro owned by Catherine Woodring and driven by Marcus Woodring, and a 1966 Chevrolet owned by Charles Abernathy and operated by Jerry Abernathy. Plaintiff James Engle was the registered owner of the MG. Tony Fox (Fox) and Ronald Norman (Norman) were passengers in the MG and Eric, Catherine and Melissa Woodring were passengers in the Camaro.

On 14 December 1974 Farm Bureau issued to James Engle a policy of automobile liability insurance covering the MG. This policy was issued as Proof of Financial Responsibility pursuant to G.S. 20-279.21(b)(2) and the provisions of § (b)(2) of that statute were deemed written into said policy as a mater of law. The policy covered James Engle as "Named Insured" and "any resident of the same household" together with "any other person using such automobile with the permission of the named insured, provided that his actual operation or (if he is not operating) his actual other use thereof is within the scope of such permission." Defendant State Farm Mutual Automobile Insurance Company (State Farm) had issued to Silvers a policy of automobile liability insurance which was in full force and effect on 17 August 1975. At the time of the accident in question said policy insured Silvers' operation of the MG in an amount equal to the minimum limits then required by North Carolina law.

Harold Engle (Harold), born 2 October 1955, is the son of James Engle. He is and was unmarried, and on 17 August 1975 was a resident of the same household as his father. On the date of the accident Harold was over eighteen years of age and became 20 years of age on 2 October 1975. On 14 August 1975 he was attending school part time and working part time. From his own funds and collision insurance proceeds from another vehicle which

had been wrecked at an earlier time, Harold made the down payment on the MG which was purchased in May 1975. He also made subsequent payments and paid for the care and maintenance of the MG from his own funds. Like the previously wrecked car, the MG was titled in the name of James Engle. However, until 14 August 1975 the MG was operated primarily by Harold for his own purposes. He "came and went" with the MG as he pleased. In the presence of Norman on occasions prior to 17 August 1975 Harold had referred to the MG as "his" car. James Engle did not exercise any control over the MG other than to instruct Harold not to permit others to drive it; the only occasion on which James Engle drove the car was when it was first purchased.

From the time Harold obtained a driver's license at age 16 his father had repeatedly instructed him not to let anyone else drive a car titled in his (James Ingle's) name and this instruction was repeated when the MG was purchased. On several occasions prior to 17 August 1975 James Engle instructed Harold not to let anyone else drive the MG. Nevertheless, Harold had permitted other persons to operate the MG on several occasions prior to 14 August 1975. Norman and Silvers had been permitted to drive the MG while Harold was a passenger therein. Norman was Harold's first cousin. On 14-17 August 1975 neither Norman nor Silvers was a resident of the same household as James Engle.

On the night of 14 August 1975 Harold gave his permission for the possession of the MG to Fox, Norman and Silvers. At Harold's request Norman agreed for Harold to use his vehicle and delivered the keys to it to Harold in exchange for the keys to the MG, thereby consumating an exchange of vehicles. At the time the vehicles were exchanged Harold was aware that the MG was to be taken to Myrtle Beach by Fox, Norman and Silvers. At the time of the exchange of automobiles no restrictions were placed on who could or could not drive the MG, nor were any instructions given as to who might operate it while being driven to and from the beach. Silvers drove the MG from the time it left a parking lot in Morganton until it arrived in Myrtle Beach and for several days thereafter. During the return trip to Morganton on 17 August 1975 a wreck occurred while Silvers was operating the MG, proximately causing the death of Fox and causing serious and permanent injuries to Norman.

On Friday morning, 15 August 1975, James Engle observed that the MG was not at his residence but that an Oldsmobile belonging to Norman was there. James was informed upon inquiry of Harold that the MG had been loaned to Norman and others to go to Myrtle Beach. James never reported the absence of said MG to police officers. Nor did he go himself or request anyone else to go and obtain possession of the MG. Possession of the Oldsmobile was retained by Harold through Sunday, 17 August 1975, and for several days thereafter.

The suit filed against the administrator of Silvers' estate and James Engle in the Superior Court of Burke County by the administrator of Fox's estate and by Norman have been settled by consent judgments and copies of the same have been made a part of the record in this case. Claims of other parties to this case injured in the accident have all been settled by State Farm.

The parties stipulated that the issue in this case is "Was William Michael Silvers, at the time of the accident on August 17, 1975, in lawful possession of the 1970 MG automobile?" "The court finds as a fact that he was in lawful possession of and the driver of the MG at that time."

Upon said findings of fact, the court concluded as a matter of law that Farm Bureau issued its policy of insurance insuring the MG; and that said policy was in full force and effect on 17 August 1975 while the MG was being operated by Silvers; that Silvers was in lawful possession of the MG at the time of the collision in question; that Farm Bureau is liable under its policy issued to James Engle which covered Silvers in said accident to the limits of its liability thereunder; and that State Farm is liable under its policy which covered Silvers in the accident in question to the limits of its liability thereunder.

The court adjudged that both Farm Bureau and State Farm provided coverage for the operation of the MG by Silvers at the time of the accident in question.

Plaintiffs appealed.

*Patrick, Harper & Dixon, by Charles D. Dixon and Stephen M. Thomas, for plaintiff appellants.*

*Byrd, Byrd, Ervin & Blanton, by Robert B. Byrd, for the defendant appellee, administrator of the estate of Tony Martin Fox; and Hatcher, Sitton, Powell & Settlemeyer, by Claude S. Sitton, for the defendant appellee, Ronald Wayne Norman.*

BRITT, Judge.

The only parties with interest remaining in the outcome of this litigation are plaintiffs, defendant Norman and defendant Fox, administrator. The consent judgments entered in the Norman and Fox cases provide that State Farm would pay its remaining coverage to these claimants. Farm Bureau agreed that if it is ultimately determined in this action that it did provide coverage to Silvers for the accident in question, it would pay its policy limits to both Norman and Fox's administrator. These claimants agreed to accept either the remainder of State Farm's coverage or that amount plus the limits of Farm Bureau's coverage in each case (depending on the outcome of this action), in total settlement of their claims.

Plaintiffs' sole contention is that the trial court erred in finding and concluding that Silvers was in "lawful possession" of the MG at the time of the accident in question. They rely primarily on *Insurance Co. v. Broughton*, 283 N.C. 309, 196 S.E. 2d 243 (1973).

In *Broughton*, the parties stipulated: Budget Rent A Car, the insured specifically named in the automobile liability insurance policy, by written agreement rented the insured vehicle to Carraway, a qualified licensed driver who agreed to be bound by all provisions of the lease. The lease contained provisions that all authorized drivers of the rented vehicle must be 21 or older and licensed; and the renter agreed that the vehicle would not be used, operated or driven by any person except the renter, an additional driver shown on the agreement, or a qualified licensed driver over 21, with lessor's permission first obtained. Very soon after renting the car, Carraway relinquished control of it to Massey who was only 19 and not a member of Carraway's household. Carraway proceeded to use his own car while Massey used the rented car. Massey was involved in an accident and suit was brought to determine the insured's liability.

The Supreme Court, in an opinion by Justice Higgins, held that the owner of the rented vehicle obligated itself to be responsible for Carraway's negligence but "Carraway could not, in violation of his own agreement, make the owner responsible for Massey's negligence. No provision is made for owner's liability either by the policy or by G.S. 20-279.21, as amended, until lawful

possession is first established. This may be done by express or implied permission of the owner." The court upheld the trial court's conclusion that as a matter of law Massey was not a person in lawful possession of the rented automobile and was not insured by the terms of the policy. The court further held that Massey was not within the coverage required by G.S. 20-281 as he did not come within any of the terms enumerated therein.

In a concurring opinion, Justice Branch agreed with the conclusion reached in the majority opinion but took the position that the case was governed by G.S. 20-281, the statute relating to persons engaged in renting motor vehicles. He pointed out that G.S. 20-281 does not include as an insured "any other person in lawful possession"; and that it was not necessary or proper that the court consider whether Massey was in "lawful possession" at the time of the collision.

While *Broughton* comes close to supporting plaintiff's contention, we do not think it controls the case at hand due primarily to the difference in the facts in the two cases. In *Broughton,* Carraway violated a written agreement which he entered into with the owner of the vehicle in question; in the case at hand, Harold did nothing more than disregard instructions given to him by his father. In *Broughton,* Budget Rent A Car did not know that its vehicle had been delivered to another driver until after the damage had been done; in this case, James knew on Friday morning that Harold had loaned the MG to Norman and others and he made no effort to get the MG back before the accident occurred on the following Sunday afternoon. Furthermore, for all practical purposes Harold was the "owner" of the MG.

In *Insurance Co. v. Chantos,* 25 N.C. App. 482, 214 S.E. 2d 438, *cert. denied,* 287 N.C. 465, 215 S.E. 2d 624 (1975), this court held that where the original permittee, the son of insureds, gave another person express permission to use the vehicle, the other person was thereby placed in "lawful possession" under G.S. 20-279.21(b)(2). While *Insurance Co. v. Chantos, supra,* later found its way to the Supreme Court on another appeal, 293 N.C. 431, 238 S.E. 2d 597 (1977), that court did not disturb the principle just stated. In fact, the court restated principles which are applicable here as follows:

Engle v. Insurance Co.

Under the Financial Responsibility Act, all insurance policies covering loss from liability growing out of the ownership, maintenance and use of an automobile are mandatory to the extent coverage is required by G.S. 20-279.21. The primary purpose of this compulsory motor vehicle liability insurance is to compensate innocent victims who have been injured by financially irresponsible motorists. The victim's rights against the insurer are not derived through the insured, as in the case of voluntary insurance. Such rights are statutory and become absolute upon the occurrence of injury or damage inflicted by the named insured, by one driving with his permission, or by one driving while in lawful possession of the named insured's car, regardless of whether or not the nature or circumstances of the injury are covered by the contractual terms of the policy. The provisions of the Financial Responsibility Act are "written" into every automobile liability policy as a matter of law, and, when the terms of the policy conflict with the statute, the provisions of the statute will prevail. (Citations omitted.) 293 N.C. 440-441.

Chapter 1162 of the 1967 Session Laws reinstated the words "or any other persons in lawful possession" to G.S. 20-279.21(b)(2). The preamble to said chapter suggests very strongly that the reason for adding the quoted words was to alleviate the necessity of proving that the operator of a vehicle belonging to another had "the express or implied permission of the owner to drive [the vehicle] on the very trip and occasion of the collision".

We hold that the trial court did not err in finding as a fact and concluding as a matter of law that Silvers was in "lawful possession" of the MG at the time of the collision in question and in declaring Farm Bureau liable under its policy.

The judgment appealed from is

Affirmed.

Judges CLARK and ERWIN concur.