OHIO CASUALTY INSURANCE COMPANY, PLAINTIFF v. JOSEPH LEON AN-
DERSON AND LEISA J. WATKINS, DEFENDANTS, AND STATE FARM
MUTUAL AUTOMOBILE INSURANCE COMPANY, INTERVENOR DEFENDANT

No. 8125SC1395

(Filed 7 December 1982)

Insurance § 79— purchase of automobile for own use—title in another—owner for
purpose of automobile liability insurance

Where defendant purchased a motor vehicle for his own exclusive posses-
sion and use but registered legal title in the name of his son without the son's
knowledge, and defendant obtained insurance coverage for the vehicle and
paid the premiums therefor, defendant had an equitable interest in the vehicle
which sufficed to make him an "owner" of the vehicle within the coverage in-
tent of an owner's liability policy issued to defendant by plaintiff insurer when
such policy is interpreted in light of the purpose and intent of the Financial
Responsibility Act. G.S. 20-4.01(26); G.S. 20-279.21(b).

APPEAL by intervenor defendant from *Ferrell, Judge.* Judg-
ment entered 16 October 1981 in Superior Court, CATAWBA Coun-
ty. Heard in the Court of Appeals 13 October 1982.

*Sigmon, Clark and Mackie, by Jeffrey T. Mackie, for plaintiff
appellee.*

*Patrick, Harper & Dixon, by Stephen M. Thomas, for in-
tervenor defendant appellant.*

*Mullen, Holland & Cooper, P.A., by R. T. Wilder, Jr., for
defendant Joseph Leon Anderson.*

WHICHARD, Judge.

Defendant Joseph Leon Anderson, Sr. (hereafter "Senior")
purchased a motor vehicle for his own exclusive possession and
use, but registered legal title in the name of his son, Joseph Leon
Anderson, Jr. (hereafter "Junior"). Plaintiff issued to "Joseph

Leon Anderson" an owner's policy of liability insurance, *see* G.S. 20-279.21(b), which described this vehicle, among others, by make and identification number. Plaintiff's agent charged Senior a specific premium for this vehicle, which Senior paid. The policy was certified to the Commissioner of Motor Vehicles as an owner's policy of liability insurance. *See* G.S. 20-309.

Senior, while driving the vehicle, collided with a vehicle driven by defendant Watkins and insured by intervenor defendant. Junior at that time was unaware that the vehicle was titled in his name.

Plaintiff sought and obtained a declaratory judgment that its policy provided no coverage of the collision. Intervenor defendant appealed. We reverse.

The Motor Vehicle Safety and Financial Responsibility Act of 1953, now G.S. 20-279.1 to .39, provides the statutory framework for issuance of automobile liability policies in this jurisdiction. "The provisions of the Financial Responsibility Act are 'written' into every automobile liability policy as a matter of law, and, when the terms of the policy conflict with the statute, the provisions of the statute will prevail." *Insurance Co. v. Chantos*, 293 N.C. 431, 441, 238 S.E. 2d 597, 604 (1977). *Accord, Harrelson v. Insurance Co.*, 272 N.C. 603, 609-10, 158 S.E. 2d 812, 817-18 (1968); *Engle v. Insurance Co.*, 37 N.C. App. 126, 132, 245 S.E. 2d 532, 535, *disc. rev. denied*, 295 N.C. 645, 248 S.E. 2d 250 (1978).

This Act provides for two kinds of policies—owner's, G.S. 20-279.21(b), and operator's, G.S. 20-279.21(c). "Whether . . . [one is] insured . . . as an owner or as an operator depends on the intent of the parties." *Lofquist v. Insurance Co.*, 263 N.C. 615, 618, 140 S.E. 2d 12, 14 (1965).

The parties stipulated that the policy here was certified to the Commissioner of Motor Vehicles, pursuant to G.S. 20-279. 21 and -309, as an owner's policy; and the accuracy of that certification is uncontroverted. The clear intent thus was to issue an owner's policy insuring Senior.

"An owner's policy protects the *owner, as the named insured*; it also protects any other person using the insured vehicle, with the owner's permission . . . ." *Lofquist, supra*, 263 N.C. at 618, 140 S.E. 2d at 14 (emphasis supplied). Issuance of an owner's

policy thus is generally to a "named insured" who is the "owner" of the described vehicle.

The policy here defines "owned automobile" as "a private passenger . . . automobile described in this policy for which a specific premium charge indicates that coverage is afforded." The vehicle involved in the collision clearly falls within this definition. The policy does not define "owner," however; and whether Senior was the "owner" of the "owned automobile" so as to establish coverage under the owner's policy is the dispositive issue.

G.S. 20-4.01(26) defines "owner" as "[a] person holding the legal title to a vehicle." This definition applies throughout Chapter 20, and thus to G.S. 20-279.1 to .39, the Financial Responsibility Act, "[u]nless the context otherwise requires." G.S. 20-4.01. It thus must be read into every liability insurance policy within the purview of the Act, *see Chantos, supra,* unless the context otherwise requires.

Prior to 1973 the G.S. 20-4.01(26) definition of "owner" appeared in a definition section applicable solely to the Financial Responsibility Act. G.S. 20-279.1(9) (repealed 1973). The 1973 General Assembly repealed the definition in G.S. 20-279.1(9), 1973 N.C. Sess. Laws, c. 1330, s. 39, and placed it in G.S. 20-4.01. The apparent purpose was to eliminate unnecessary repetition of this definition in separate articles of Chapter 20, not to make the definition inapplicable to the Financial Responsibility Act.

Prior to repeal of G.S. 20-279.1(9), the provision of the Financial Responsibility Act which defined "owner" as the legal title holder, our Supreme Court held that "for purposes of tort law *and liability insurance coverage,* no ownership passes to the purchaser of a motor vehicle which requires registration" until transfer of legal title is effected as provided in G.S. 20-72(b). *Insurance Co. v. Hayes,* 276 N.C. 620, 640, 174 S.E. 2d 511, 524 (1970) (emphasis supplied). No reason appears for concluding that the holding of *Hayes* was altered by the 1973 legislation eliminating the duplicative definition of owner then in the Financial Responsibility Act (G.S. 20-279.1(9)). Thus, as between a vendor and vendee of a vehicle, the vendee cannot acquire valid owner's liability insurance until legal title has been transferred or assigned to him by or at the direction of the vendor. The case here

does not involve whether or when legal title passed from a vendor to a vendee, however; and we do not find *Hayes* controlling.

In *Younts v. Insurance Co.*, 281 N.C. 582, 189 S.E. 2d 137 (1972), while the only competent evidence before the Court showed legal title to the vehicle in question in one Charles, one Myers had obtained an owner's policy thereon. Evidence held properly excluded because of the "best evidence rule" would have shown that one Wright had legal title, which he transferred to Charles; that Charles defaulted on his note with the bank which financed the purchase of the vehicle, whereupon Wright paid the note; that the bank subsequently transferred title to Myers; and that Wright received the title certificate from the bank and gave it to Myers. *Id.* at 586-87, 189 S.E. 2d at 140.

The court expressly relied on the holding in *Hayes, supra,* that no ownership passes to the vendee until legal title is transferred to him by the person who holds it at time of sale. *Id.* at 586-87, 189 S.E. 2d at 140. It thus held that Myers did not have coverage under the policy because Charles was still the owner of the vehicle, there being "no evidence that Myers was the holder of a legal title to the [vehicle] in question." *Id.*

Plaintiff would have us view *Younts* as mandating that one who does not hold legal title to a vehicle cannot under any circumstances obtain owner's liability insurance thereon. *See Norris v. Insurance Co.*, 26 N.C. App. 91, 102, 215 S.E. 2d 379, 388, *cert. denied*, 288 N.C. 242, 217 S.E. 2d 666 (1975) (The Court stated that in *Younts* the Supreme Court "held that the policy [there] was a contract between the insurance company and the owner of the vehicle involved and that since the person against whom plaintiff had obtained judgment was not the owner, plaintiff could not recover from the insurance company."). "A decision of the Supreme Court [, however,] must be interpreted within the framework of the facts of that particular case." *Insurance Co. v. Insurance Co.*, 279 N.C. 240, 249, 182 S.E. 2d 571, 577 (1971), *quoting Howard v. Boyce*, 254 N.C. 255, 265, 118 S.E. 2d 897, 905 (1961). We believe the situation here differs considerably from that in *Younts*, and we thus do not find *Younts* controlling.

Here, neither the vendor nor the vendee had legal title subsequent to sale of the vehicle. Legal title, instead, was transferred simultaneously and in connection with the vendee's

purchase of the vehicle, from the vendor to a third party, the vendee's son. That transfer was accomplished at the vendee's direction and without the knowledge or approval of his son. The vendee, however, paid the entire purchase price, had exclusive possession and use of the vehicle, obtained the insurance coverage for it, and paid the premiums therefor. This sufficed to give him a clear equitable interest in the vehicle, *see Insurance Co. v. Insurance Co., supra* (son of legal owner may have had equitable interest in vehicle); and that equitable interest sufficed, under the particular facts and circumstances, to make him the "owner" of the vehicle within the coverage intent of the policy, interpreted in light of the purpose and intent of the Financial Responsibility Act.

In *Engle v. Insurance Co., supra*, 37 N.C. App. at 132, 245 S.E. 2d at 535, this Court reiterated the following from *Chantos, supra*, 293 N.C. at 440-41, 238 S.E. 2d at 604:

> The primary purpose of . . . compulsory motor vehicle liability insurance is to compensate innocent victims who have been injured by financially irresponsible motorists. The victim's rights against the insurer are not derived through the insured . . . . Such rights are statutory and become absolute upon the occurrence of injury or damage inflicted by the named insured, by one driving with his permission, or by one driving while in lawful possession of the named insured's car, regardless of whether or not the nature and circumstances of the injury are covered by the contractual terms of the policy.

Our Supreme Court stated in *Insurance Co. v. Insurance Co., supra*: "The purpose of the Act is to provide protection to the public from damages resulting from the negligent operation of automobiles by irresponsible persons. By its definition of an 'owner,' the legislature attempted to close all avenues of escape from its provisions." 279 N.C. at 247, 182 S.E. 2d at 576. *Cf. Norris, supra*, 26 N.C. App. at 101, 215 S.E. 2d at 387 (purpose of aircraft liability insurance).

The policy here was clearly intended, by both the issuer and the purchaser, to cover the purchaser while operating the vehicle involved in the collision in question. To allow defeat of coverage by the technicality of placement of legal title in the purchaser's son, at the purchaser's direction and without the son's knowledge,

while the purchaser retained all equitable interest in the vehicle, would defy the legislative intent "to close all avenues of escape from [the] provisions [of the Financial Responsibility Act]." *Insurance Co. v. Insurance Co.*, 279 N.C. at 247, 182 S.E. 2d at 576. We note that in at least two cases in which courts have refused to acknowledge the holder of an equitable interest as the "owner" of the vehicle for liability purposes, the legal titleholder was the named insured; and the result was thus to uphold coverage under the policy. *Insurance Co. v. Insurance Co.*, 279 N.C. 240, 182 S.E. 2d 571 (1971); *Indiana Lumbermens Mutual Insurance Co. v. Parton*, 147 F. Supp. 887, 889-90 (M.D.N.C. 1957) (The "Act explicitly defines the owner as the person who holds the legal title of a motor vehicle rather than one who merely has an equitable claim or title thereto . . . . If the insurer could escape liability by proof that the holder of the legal title was not the owner, it would afford a dangerous avenue by which the public would still be without the Financial Responsibility Provision which the Legislature intended for the protection of the public.").

The "owner" of a vehicle is the holder of the legal title "[u]nless the context otherwise requires." G.S. 20-4.01. If the oft expressed purpose of the Financial Responsibility Act is to be effectuated, the context in which the word "owner" is to be interpreted and applied here otherwise requires. The discrete facts and circumstances dictate that Senior be held the "owner" of the vehicle so as to afford coverage under the policy to compensate the innocent victims of his negligence while operating the vehicle, if such is established.

We therefore so hold, and the judgment declaring the contrary is

Reversed.

Judges HEDRICK and ARNOLD concur.