INDIANA LUMBERMENS MUTUAL INSURANCE COMPANY v. UNIGARD INDEMNITY COMPANY

No. 8426SC859

(Filed 16 July 1985)

Insurance § 85— coverage of vehicle not described in policy—title not transferred —no coverage

Summary judgment was properly entered for defendant in an action seeking a declaration that defendant's policy covered injuries received in an automobile accident where defendant had issued an automobile liability policy to Tommy Kendrick; Kendrick was driving a 1966 Chevrolet which had been given to him by his father; an accident occurred and Kendrick's passenger recovered damages from plaintiff pursuant to his uninsured motorist's coverage with plaintiff; defendant's policy covered "owned automobiles" and "temporary substitute automobiles"; Kendrick had not received or sought from his father a certificate of title or other writing transferring ownership of the Chevrolet; the vehicles specifically described in the policy were not mechanically disabled and the Chevrolet was not given to Kendrick as a substitute vehicle; and Kendrick did not notify his insurance agent or any representative of defendant that he was driving the Chevrolet or of the accident. G.S. 20-4.01(26), G.S. 20-279.1 to .39.

APPEAL by plaintiff from *Saunders, Chase B., Judge.* Judgment entered 15 June 1984 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 13 May 1985.

On 24 March 1981 Tommy Lewis Kendrick (Kendrick) was driving a Chevrolet automobile when an accident occurred in which his passenger, Calvin Harrison, was injured. Harrison

Indiana Lumbermens Mut. Ins. Co. v. Unigard Indemnity Co.

sought to recover damages for his injuries from defendant insurance company, which had issued an automobile liability policy to Kendrick. Defendant denied coverage under the policy. Thereafter Harrison recovered $25,000 for his injuries from plaintiff insurance company pursuant to the uninsured motorist provisions of a policy it had issued to him.

Plaintiff then instituted this action seeking a declaration that the policy issued by defendant covered Kendrick's liability in connection with the accident and that therefore plaintiff is entitled to recover from defendant the sum of $25,000 paid on defendant's behalf to Harrison. The trial court concluded that Kendrick was not insured under defendant's policy for his operation of the automobile when the accident occurred, and it therefore entered summary judgment for defendant. Plaintiff appeals.

*George C. Collie and Charles M. Welling for plaintiff appellant.*

*Golding, Crews, Meekins, Gordon & Gray, by Ned A. Stiles, for defendant appellee.*

WHICHARD, Judge.

The record shows the following undisputed facts:

Defendant issued a policy of automobile liability insurance to Kendrick, the effective dates of which were 25 September 1980 until 25 March 1981. The automobiles specifically described and referred to in the policy were a 1978 Buick and a 1975 Chrysler. During the period of the policy it was the only automobile liability policy Kendrick had in full force and effect. The policy was issued in this state pursuant to the laws of this state, specifically the Financial Responsibility Act, G.S. 20-279.1 to .39. Several days prior to the date of the accident Kendrick was given a 1966 Chevrolet automobile by his father. The Chevrolet was registered in South Carolina in the father's name and had been sitting in the father's yard. When the father gave the Chevrolet to Kendrick, he gave him the only keys to it. No restrictions were placed on Kendrick's use of the Chevrolet. When Kendrick was given the automobile, he drove it from his father's home in South Carolina to his own residence in this state where he parked it in his yard. Kendrick retained possession of the Chevrolet from the time it

was given to him until the accident and drove it on several occasions during this period.

When Kendrick's father gave him the Chevrolet, he did not deliver to Kendrick a certificate of title or any other writing transferring ownership. The father never executed a certificate of title to Kendrick either before or after the accident, nor did Kendrick attempt to obtain such a certificate. When Kendrick was given the Chevrolet the vehicles specifically described in the policy issued by defendant were in working order and were not mechanically disabled. The Chevrolet was not given to Kendrick as a substitute automobile for either of the vehicles described in the policy. Prior to May 1981, Kendrick did not notify his insurance agent or any representative of defendant that he had been driving the Chevrolet, nor, prior to that date, did he notify or discuss with such persons his accident of 24 March 1981.

The policy issued by defendant provided that defendant would pay all sums which Kendrick became legally obligated to pay as damages because of bodily injury or property damage "arising out of the ownership, maintenance or use of the owned automobile or any non-owned automobile." "Owned automobile" is defined in the policy as:

(a) a private passenger, farm or utility automobile described in this policy for which a specific premium charge indicates that coverage is afforded,

(b) a trailer owned by the named insured,

(c) a private passenger, farm or utility automobile *ownership* of which is acquired by the named insured during the policy period, provided

(1) it replaces an owned automobile as defined in (a) above, or

(2) the company insures all private passenger, farm and utility automobiles owned by the named insured on the date of such acquisition and the named insured notifies the company during the policy period or within 30 days after the date of such acquisition of his election to make this and no other policy issued by the company applicable to such automobile, or

(d) a temporary substitute automobile [.] [Emphasis supplied.]

The policy defines a "temporary substitute automobile" as "any automobile or trailer, not owned by the named insured, while temporarily used with the permission of the owner as a substitute for the owned automobile or trailer when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction." A "non-owned automobile" is defined in the policy as "an automobile or trailer not owned by or furnished for the regular use of the named insured or any relative, other than a temporary substitute automobile."

Plaintiff contends that the Chevrolet given to Kendrick by his father was an "owned automobile" as defined in section (c) of the policy and that therefore defendant was liable for the damages arising out of Kendrick's operation of the Chevrolet on 24 March 1981. We disagree. Although Kendrick acquired possession of the Chevrolet during the period defendant's policy was in effect, he did not acquire ownership as required to bring it within the definition in section (c).

The word "owner" is defined in G.S. 20-4.01(26), in pertinent part, as "[a] person holding the legal title to a vehicle." This definition applies throughout Chapter 20 of our General Statutes and must be read into every automobile liability insurance policy within the purview of the Financial Responsibility Act, G.S. 20-279.1 to .39, unless the context otherwise requires. *Ohio Casualty Ins. Co. v. Anderson*, 59 N.C. App. 621, 623, 298 S.E. 2d 56, 58, 36 A.L.R. 4th 1, 3 (1982), *cert. denied*, 307 N.C. 698, 301 S.E. 2d 101 (1983). Although in *Ohio Casualty*, 59 N.C. App. at 626, 298 S.E. 2d at 59-60, this Court recognized that under certain facts and circumstances the "owner" of a vehicle could be someone other than the holder of legal title, the facts and circumstances here do not justify such a result.

Our Supreme Court has indicated that for purposes of liability insurance coverage, ownership of a motor vehicle which requires registration under the Motor Vehicle Act of 1937 does not pass until transfer of legal title is effected as provided in G.S. 20-72(b). *See Insurance Co. v. Hayes*, 276 N.C. 620, 640, 174 S.E. 2d 511, 524 (1970); *see also Ohio Casualty Ins. Co. v. Anderson*, 59 N.C. App. at 623, 298 S.E. 2d at 58. Thus, ownership does not pass until

(1) the owner executes, in the presence of a person authorized to administer oaths, an assignment and warranty of title on the reverse of the certificate of title, including the name and address of the transferee, (2) there is an actual or constructive delivery of the motor vehicle, and (3) the duly assigned certificate of title is delivered to the transferee.

*Insurance Co. v. Hayes*, 276 N.C. at 640, 174 S.E. 2d at 524.

The record shows that Kendrick did not hold legal title to and thus was not the owner of the Chevrolet prior to the time it was given to him by his father, and that he did not acquire or even attempt to acquire title to, or ownership of, the automobile while defendant's policy was in effect. Thus, the Chevrolet was not an "owned automobile" as defined in section (c) of the policy. Since the Chevrolet was not given to Kendrick as a substitute for one of the owned automobiles described in the policy, it was not a "temporary substitute automobile" as defined in the policy. Since the Chevrolet was not a trailer or a temporary substitute automobile or an automobile described in the policy for which a specific premium was charged, it was not an "owned automobile" as otherwise defined in the policy.

The record further shows that Kendrick was given unrestricted use and possession of the Chevrolet. "Where an insured driver has the unrestricted use and possession of an automobile, the certificate of title for which is retained by another, the car is 'furnished for the regular use of' the insured driver, and thus not covered by the 'non-owned' clause of the policy." *Gaddy v. Insurance Co. and Ramsey v. Insurance Co.*, 32 N.C. App. 714, 717, 233 S.E. 2d 613, 615 (1977); *see also Devine v. Casualty & Surety Co.*, 19 N.C. App. 198, 206, 198 S.E. 2d 471, 477 (1973), *cert. denied*, 284 N.C. 253, 200 S.E. 2d 653 (1973).

We conclude that the Chevrolet operated by Kendrick on 24 March 1981 was neither an "owned automobile" nor a "non-owned automobile" as defined in defendant's policy and that therefore defendant was not liable for damages arising out of its use. Accordingly, we affirm the entry of summary judgment for defendant.

Affirmed.

Chief Judge HEDRICK and Judge WEBB concur.