WILLIAM W. JENKINS v. AETNA CASUALTY AND SURETY COMPANY

No. 466A88

(Filed 4 May 1989)

**1. Insurance § 85— insured as wife—husband's equity interest in automobile—no transfer of title—exclusion for ownership of unlisted vehicles—not applicable**

A provision in an automobile liability insurance policy excluding coverage for liability arising from the use of an unlisted vehicle "owned" by Patterson, the spouse of defendant's insured, did not apply where Patterson paid $400 cash as the total price for a Camaro and took immediate possession of the vehicle but never received the certificate of title; there was no indication that the owner ever properly executed an assignment of the certificate of title; Patterson purchased the Camaro prior to becoming a covered driver under his wife's policy, as they were not married until the year following the purchase; no certificate of title or registration for the vehicle, which was not in good operating condition, was ever transferred as a result of the transaction involved here; and the Camaro could not be lawfully operated on the highways and had been driven only once in two years. Patterson did not meet the statutory definition of owner in N.C.G.S. § 20-4.01(26), and nothing in the context in which that term is found points to any other definition.

**2. Insurance § 85— automobile liability insurance—exclusion clause—unlisted vehicle furnished for regular use—not applicable**

An exclusion clause in an automobile liability insurance policy for a vehicle furnished to Patterson for his "regular use" did not apply where the evidence indicated that Patterson had driven the vehicle once in two years; it was not in good driving condition; had no license plate or registration; and could not be lawfully operated on the highways.

APPEAL of right by the plaintiff pursuant to N.C.G.S. § 7A-30 of the decision of a divided panel of the Court of Appeals, 91 N.C. App. 388, 371 S.E. 2d 761 (1988), affirming a judgment entered by *Johnson, J.*, in the Superior Court, LEE County, on 9 November 1987. Heard in the Supreme Court on 15 February 1989.

*J. Douglas Moretz for the plaintiff-appellant.*

*Pope, Tilghman, Tart & Taylor, by Ann C. Taylor and Johnson Tilghman, for the defendant-appellee.*

MITCHELL, Justice.

The plaintiff filed this civil action seeking to hold the defendant, Aetna Casualty and Surety Company, liable for a judgment entered against the defendant's insured. Both parties made motions for summary judgment. The trial court denied the plaintiff's motion and entered summary judgment for the defendant, and the Court of Appeals affirmed that judgment. Judge Phillips having dissented in the Court of Appeals, the plaintiff appealed to this Court as a matter of right.

The issues presented by this appeal involve whether either of two exclusions in an automobile liability insurance policy issued by the defendant excluded the vehicle in which the plaintiff was injured from coverage under that policy. The majority in the Court of Appeals held that one of the exclusions applied and affirmed summary judgment for the defendant. We conclude that neither exclusion is applicable in this case. Therefore, we reverse the decision of the Court of Appeals and remand this case in order that the summary judgment entered for the defendant may be stricken and summary judgment entered, instead, for the plaintiff.

Based upon the pleadings, depositions, testimony and other matters of record before the trial court at the time it ruled upon the motions of the parties for summary judgment, the material facts were essentially uncontested. The plaintiff suffered personal injuries as a result of a 1985 automobile accident in which he was a passenger in a 1967 Chevrolet Camaro driven by William Troy Patterson. At the time of the accident, Patterson's wife was the named insured in an automobile liability insurance policy issued by the defendant. As a spouse living in the same household with his wife, Patterson was a covered driver under the terms of the policy. The Camaro had never been listed in the policy and therefore was not a covered automobile under the policy. As Patterson was a covered driver, his accident while using the Camaro would have been covered unless it came under a policy exclusion. The policy exclusions at issue excluded coverage for liability aris-

ing from the ownership, maintenance or use of any vehicle, other than those listed as covered vehicles in the policy, which was "owned" by the covered driver or "furnished for [the covered driver's] regular use."

Patterson had purchased the Camaro in September of 1983 from a man known to him only as Junior. The car had no engine and was in need of extensive repairs, but Patterson considered it a "classic" and arranged to buy it for restoration. Patterson paid Junior $400 cash and took possession of the vehicle at Junior's home. Junior told Patterson that he did not actually own the Camaro and was selling it for another man, later identified as Jerome Hall. No certificate of title was passed in the transaction. Junior told Patterson that he had a certificate of title that would be transferred to Patterson, but Patterson "never got around to getting it."

Over the next couple of years, Patterson moved the Camaro, by pulling it with other vehicles, to several different places where he carried on intermittent restoration of the vehicle as the necessary funds were saved. He eventually installed an engine and got the Camaro running, but during this period he never registered the vehicle, never obtained a certificate of title and never listed it on an insurance policy. He said he had planned to comply with all those requirements for the lawful operation of a motor vehicle after he had restored the Camaro to good operating condition.

Patterson eventually left the Camaro with a man who had an automotive repair garage at his home. As of October 1985, the Camaro had been at the garage for a considerable length of time. Patterson decided he should move the car to his own home to finish the restoration.

On 18 October 1985, the plaintiff did not go to work and Patterson picked up the plaintiff's paycheck for him and took it to the plaintiff's home after work. Patterson decided he would move the Camaro that evening, and he and the plaintiff went to the garage. After drinking some beer, Patterson got into the Camaro, for which he had no license plate or registration, to drive it to his house about four miles away. The plaintiff got into the car with Patterson.

The Camaro was wrecked by Patterson when, despite the plaintiff's requests that he slow down, Patterson failed to negotiate a sharp curve at approximately 65 miles per hour. The Camaro ran off the road and overturned, and the plaintiff was thrown from the vehicle and seriously injured.

The plaintiff brought an action against Patterson alleging that Patterson's negligent operation of the Camaro was the proximate cause of the plaintiff's injuries. On 5 December 1986, a judgment was entered against Patterson in the amount of $17,197.99 for the plaintiff's damages resulting from the accident. Thereafter, the plaintiff brought this action against the defendant insurance company alleging that the defendant was liable under its automobile liability policy for satisfaction of the judgment against Patterson.

On appeal of the trial court's summary judgment for the defendant in this action, the Court of Appeals held that the issue of ownership was controlled by an exception to the general rule that, for purposes of tort law and liability insurance coverage, no ownership passes to the purchaser of a motor vehicle until "legal" title is transferred in compliance with N.C.G.S. § 20-72(b). The Court of Appeals held that Patterson, by virtue of paying the full cash price and taking possession of the Camaro, had acquired an equitable ownership interest in the car and "owned" it within the meaning of that term as used in the defendant's insurance policy, notwithstanding the lack of compliance with the title transfer statute. We disagree.

[1] The Motor Vehicle Safety and Financial Responsibility Act, N.C.G.S. §§ 20-279.1 to 20-279.39 (1983), regulates the issuance of motor vehicle liability insurance policies in this State, and the provisions of the Act are included in automobile liability insurance policies by operation of law. *Insurance Co. v. Chantos*, 293 N.C. 431, 238 S.E. 2d 597 (1977). The definition of "owner" as used in the mandatory provisions of the Act is provided by N.C.G.S. § 20-4.01[1] and applies throughout Chapter 20 "[u]nless

---

1. N.C.G.S. § 20-4.01(26) (1983) defines "owner" as:

A person holding the legal title to a vehicle, or in the event a vehicle is the subject of a chattel mortgage or an agreement for the conditional sale or lease thereof or other like agreement, with the right of purchase upon performance

the context otherwise requires . . . ." N.C.G.S. § 20-4.01 (1983). Except under special circumstances not present in this case, the statute limits the definition of the word "owner" to the person holding legal title. N.C.G.S. § 20-4.01 (1983).

Our motor vehicle statutes also regulate the manner in which legal title and ownership of motor vehicles must be transferred. N.C.G.S. § 20-72 requires proper execution of an assignment and delivery of the certificate of title before "legal" title and ownership pass.[2] Applying the statutory definition of "owner," the statutory requirements for passing title and the statutory requirements for liability insurance, we have held that for purposes of tort law and liability insurance coverage, no ownership passes to the purchaser of a motor vehicle which requires registration until: (1) the owner executes, in the presence of a person authorized to administer oaths, an assignment and warranty of title on the reverse of the certificate of title, including the name and address of the transferee; (2) there is an actual or constructive delivery of the motor vehicle; and (3) the duly assigned certificate of title is delivered to the transferee (or lienholder in secured transactions). *Insurance Co. v. Hayes*, 276 N.C. 620, 640, 174 S.E. 2d 511, 524 (1970). *Hayes* was decided under former N.C.G.S. § 20-

---

of the conditions stated in the agreement, and with the immediate right of possession vested in the mortgagor, conditional vendee or lessee, said mortgagor, conditional vendee or lessee shall be deemed the owner for the purpose of this Chapter.

2. N.C.G.S. § 20-72(b) (1983) provides:

In order to assign or transfer title or interest in any motor vehicle registered under the provisions of this Article, the owner shall execute in the presence of a person authorized to administer oaths an assignment and warranty of title on the reverse of the certificate of title in form approved by the Division, including in such assignment the name and address of the transferee; and no title to any motor vehicle shall pass or vest until such assignment is executed and the motor vehicle delivered to the transferee. The provisions of this section shall not apply to any foreclosure or repossession under a chattel mortgage or conditional sales contract or any judicial sale.

Any person transferring title or interest in a motor vehicle shall deliver the certificate of title duly assigned in accordance with the foregoing provision to the transferee at the time of delivering the vehicle, except that where a security interest is obtained in the motor vehicle from the transferee in payment of the purchase price or otherwise, the transferor shall deliver the certificate of title to the lienholder and the lienholder shall forward the certificate of title . . . to the Division within 20 days.

279.1(9) (repealed 1973), which essentially provided the same definition of "owner" as N.C.G.S. § 20-4.01(26). The rationale of *Hayes* applies as well under the § 20-4.01(26) definition of "owner" and was not changed by the legislature's repeal of the repetitive definition in N.C.G.S. § 20-279.1(9). *See Ohio Casualty Ins. Co. v. Anderson*, 59 N.C. App. 621, 298 S.E. 2d 56 (1982), *cert. denied*, 307 N.C. 698, 301 S.E. 2d 101 (1983).

The defendant insurance company had the burden of showing that an exclusion to coverage under its policy was applicable. *Insurance Co. v. McAbee*, 268 N.C. 326, 150 S.E. 2d 496 (1966). The evidence before the trial court in this case established that Patterson paid $400 cash as the total price for the Camaro and took immediate possession of the vehicle, but he never received the certificate of title. There was no indication from the forecast of evidence presented to the trial court that the owner, Jerome Hall, ever properly executed an assignment of the certificate of title. Clearly, the parties to this transaction did not comply with the requirements of N.C.G.S. § 20-72(b) for the transfer of legal title and ownership. As this Court has construed the relevant statutory provisions, there had been no transfer of title and ownership of the Camaro to Patterson. Therefore, Patterson did not "own" the vehicle within the terms of the liability insurance policy.

In concluding that Patterson "owned" the Camaro, the Court of Appeals relied upon an exception to the rules discussed in *Hayes* for determining the ownership of a motor vehicle. Such an exception for one who has an equitable interest in a vehicle was applied by the Court of Appeals in *Ohio Casualty Ins. Co. v. Anderson*, 59 N.C. App. 621, 298 S.E. 2d 56. In *Anderson*, a father purchased a car, paid the entire purchase price, took possession of the car, obtained insurance coverage for the car under an "owner's policy" and paid premiums on the policy. In the purchase transaction, however, he had his son's name placed on the certificate of title, so that legal title was transferred directly from the vendor to the purchaser's son, who was never told that title was in his name. When the father subsequently wrecked the vehicle causing injury to others, the liability insurer contended that the accident was not covered by the father's policy because the son owned the car. The Court of Appeals held in *Anderson* that the father had sufficient equitable interest in the car to make him an "owner" within the coverage of the policy.

This Court's denial of a petition for discretionary review or, as in *Anderson*, of a petition for a writ of *certiorari* to review a decision of the Court of Appeals has no value as precedent. *See Peaseley v. Coke Co.*, 282 N.C. 585, 194 S.E. 2d 133 (1973). Further, it is not necessary that we consider or decide here whether *Anderson* was correctly decided. However, we note that much of the reasoning relied upon by the Court of Appeals in *Anderson* is not applicable to this case. The Court of Appeals was especially concerned in *Anderson* with the overall purpose of our compulsory liability insurance laws — compensation of accident victims who otherwise would not be compensated by their tortfeasors — and how that purpose would be undermined if coverage was denied when the policy at issue "was clearly intended, by both the issuer and the purchaser, to cover the purchaser while operating the vehicle involved in the collision in question." 59 N.C. App. at 625, 298 S.E. 2d at 59. In *Anderson* the Court of Appeals focused upon the fact that the parties had complied with our statutory procedures for transferring title and the fact that the purchaser's son had no knowledge that title was in his name. The Court of Appeals concluded that to deny coverage based on an equitable interest under such facts would defeat the purpose of the Financial Responsibility Act by the mere "technicality" of placement of legal title in the purchaser's son. *Id.*

The Court of Appeals in *Anderson* found those factors so overwhelming that it concluded the statutory definition of "owner" did not even apply in that case. Instead, it concluded on the facts before it that "the context otherwise require[d]" under N.C.G.S. § 20-4.01 that a different definition of "owner" be applied, because a strict application of the definition provided by that statute would defeat the purpose of the Financial Responsibility Act by denying liability coverage. *Id.* In *Anderson*, the Court of Appeals also distinguished cases indicating that the holder of an equitable interest is not an "owner." *E.g., Insurance Co. v. Insurance Co.*, 279 N.C. 240, 182 S.E. 2d 571 (1971). As the Court of Appeals pointed out, the result of the application of the statutory definition of "owner" in such cases was to uphold coverage, while applying that definition in *Anderson* would have denied coverage.

In this case, Patterson did not meet the statutory definition of "owner" in N.C.G.S. § 20-4.01(26), and nothing in the context in

Jenkins v. Aetna Casualty and Surety Co.

which that, term is found points to any other definition. Furthermore, the intent and understanding of the parties in this case are not as clear as in *Anderson*. Patterson purchased the Camaro prior to becoming a covered driver under his wife's policy, as they were not married until the year following the purchase. No certificate of title or registration for the vehicle, which was not in good operating condition, was ever transferred as a result of the transaction involved here. The Camaro could not be lawfully operated on the highways and, from the uncontroverted evidence, had been driven only once in two years. Finally, the result of applying the strict letter of the statute in this case is to uphold coverage, consistent with the general purpose of the Financial Responsibility Act and with *Anderson*.

We conclude that Patterson was not the "owner" of the Camaro as that term is defined in N.C.G.S. § 20-4.01(26), and that the context in which the term was used here does not require or permit the application of any other definition. Therefore, the provision in the policy excluding coverage for liability arising from the use of a vehicle "owned" by Patterson did not apply.

[2] We next turn to the question of whether the Camaro was furnished to Patterson for his "regular use" as that term was used in the other exclusion at issue. The purpose of such terms in liability insurance policies is to provide coverage, without additional premiums, for a driver's infrequent use of other vehicles, but not as a substitute for coverage on a vehicle furnished for his regular use. *See Whaley v. Insurance Co.*, 259 N.C. 545, 131 S.E. 2d 491 (1963).

We have held that the question of whether a vehicle is for a driver's regular use is to be determined by both its *availability* for use and the *frequency* of the use. 259 N.C. at 554, 131 S.E. 2d at 498. *See also Whisnant v. Insurance Co.*, 264 N.C. 195, 141 S.E. 2d 268 (1965) (even when an employer furnishes a vehicle for the regular business-related use of an employee and the vehicle is so used, a single instance of the employee's use of the vehicle for personal purposes is not excluded from liability coverage by the "furnished for regular use" provision). The evidence before the trial court in this case indicated that Patterson had driven the Camaro once in two years. It was not in good driving condition, had no license plate or registration, and could not be lawful-

ly operated on the highways. Its condition made it unfit and unavailable for "regular use," and it was in fact not regularly used but used only once in two years. The Camaro's condition and its lack of use are dispositive on the issue of whether it was for "regular use," and we conclude that it did not come under the meaning of that term as used in the other policy exclusion.

As we conclude that the vehicle in question was neither "owned" by the covered driver nor for his "regular use," neither policy exclusion applied. Therefore, the defendant insurance company was liable for the judgment entered in favor of the plaintiff in his negligence action against Patterson.

For the foregoing reasons, we reverse the decision of the Court of Appeals, which affirmed summary judgment for the defendant. We remand this case to the Court of Appeals for its further remand to the Superior Court, Lee County, for the summary judgment entered for the defendant to be stricken and summary judgment entered, instead, for the plaintiff.

Reversed and remanded.